# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF WEST VIRGINIA

T. Weston, Inc.
DBA Ridgeley Saloon,

    Plaintiff,

v.                                                         Case No. 2:04CV56

Mineral County, West Virginia
and County Commission of
Mineral County, West Virginia, et al.,

    Defendants.

## OPINION/REPORT AND RECOMMENDATION

On September 10, 2004 the District Court denied Plaintiff's motion for a preliminary injunction. On January 5, 2005, the District Court referred the within civil action to the undersigned for the conduct of "such proceedings as are required, including but not limited to, any oral arguments on the pending issue of a preliminary injunction, any scheduling conference pursuant to Rule 16 of the Federal Rules of Civil Procedure, discovery conferences, or any other such evidentiary hearings as may become necessary in determining the motions or in preparation for submission of the proposed findings of fact and recommended disposition." Hearings were conducted in the within matter on January 10, 2005. During the hearing of January 10, 2005, the undersigned inquired if evidence was to be taken. Neither party offered any evidence. The matters at issue with respect to temporary injunctive relief were taken under consideration for the preparation of this Opinion/Report And Recommendation.

The matter was considered on all of the pleadings, memorandums filed in this action and the oral arguments made by counsel of record on January 10, 2005.

## Statement of Facts

The relevant facts are not in dispute.

Plaintiff opened a night club in Ridgeley, West Virginia on July 1, 2001. The night club featured exotic entertainment in the form of semi-nude and nude dancing.

The West Virginia Legislature passed Chapter 7, Article 1, Section 3jj which in pertinent part provides:

> (b) In the event a county has not created or designated a planning commission pursuant to the provisions of Article twenty-four, chapter eight of this code, a county commission may by order entered of record, adopt an ordinance that limits the areas of the county in which a business may offer 'exotic entertainment' as that term is defined in subsection (a) of this section.

During the period in question Mineral County did have a Planning Commission.

On November 6, 2002, the Mineral County Planning Commission recommended an ordinance to the Mineral County Commission which regulated The Location of Business Offering Exotic Entertainment. The Mineral County Commission passed it's ordinance on November 20, 2002. The Ordinance provides in pertinent part:

> Section 3:
> (A) It shall be unlawful for any person to establish a business offering exotic entertainment without first obtaining a valid location permit issued by the Administrator.
>
> Section 4:
> Any business offering exotic entertainment established prior to the effective date of this Ordinance shall be required to obtain a location permit. An application by such business shall be treated as a renewal and shall not be required to Complete Section 3, Item E of the application process, unless said business is proposing to change the location or expand the business at the existing location. All provisions of this Ordinance shall fully apply to an existing business offering exotic entertainment, except for the location restrictions contained in Section 10.
>
> Section 5:
> The Administrator shall approve the issuance of a permit to an applicant within thirty (30) days after receipt of a complete application unless he finds one or more of the following to be true.
>
> Section 8:
> The Administrator shall revoke a permit if he determines that:
> (F) a permitee or any employee of the permitted establishment knowingly

allowed a person under 21 years of age to enter the establishment during hours of operation; ....

When the Administrator revokes a permit and / or license the revocation shall continue for a period of one year and the permitee and / or any person listed on the original application form shall not be issued a new location permit for one year from the date the revocation became effective. Any re-application shall be considered a new application and shall be required to comply with all location standards applicable at that time.

Section 14:
- (A) It shall be unlawful to permit any person younger than twenty-one (21) years of age, entry into or to be on the premises of a business offering exotic entertainment at any time said establishment is open for business.
- (B) It shall be the requirement of the operator of each business offering exotic entertainment to ensure that an attendant is stationed at each public entrance to the business offering exotic entertainment at all times during regular business hours.
- (C) It shall be the responsibility and duty of the attendant to prohibit any person under the age of twenty-one (21) years form entering the business offering exotic entertainment.

Section 18:

Any person violating any provision of this Ordinance shall in addition to any other actions, which may be taken by the Administrator, The Mineral County Planning Commission or the Mineral County Commission, hereunder, shall be fined not more than one thousand dollars ($1,000) or imprisoned not more than thirty (30) days or both.

Section 19:

Any person adversely affected by any provisions of this Ordinance is entitled to seek direct judicial review before the Circuit Court of Mineral County with regard as to whether the Ordinance impermissibly burdens his or her right to establish or operate a business offering exotic entertainment.

The Mineral County Commission notified T. Weston, Inc. on January 8, 2003 of the passage of the county ordinance and of the obligation to complete and file an application in order to continue business operations.

T. Weston, Inc. completed and submitted its application and fees to continue business operations at the Ridgeley Saloon. T. Weston, Inc. heard nothing from the County Commission relative to its 2003 application. T. Weston, Inc. filed a similar application and fee for 2004 and

again heard nothing from the County Commission.

During the time period of the dispute, Mineral County did not have an "Administrator."

On May 6, 2004 Lynn A. Nelson, Mineral County, West Virginia Prosecuting Attorney, wrote Erickson of T.Weston, Inc. advising:

> "effective immediately your permit to operate a business offering exotic entertainment in Mineral County, West Virginia is hereby revoked pursuant to Section 14 of the County Ordinance. Section 14 prohibits persons under twenty-one from being on the premises during business hours. Such a violation requires mandatory revocation of your permit pursuant to Section 8.
>
> The facts supporting this violation are that on April 17, 2004 you knowingly allowed two (2) twenty year olds whom were accompanied by undercover deputies of the Mineral County Sheriff's Department into the establishment during business hours. Both individuals were carded and allowed to enter.
>
> Therefore, you must stop all exotic entertainment immediately. Failure to do so will result in criminal charges being filed against you and an injunction filed in the Circuit Court of Mineral County. You can rest assured that we will follow up to insure compliance with this letter.

The Prosecuting Attorney's letter was delivered to T. Weston, Inc. on May 7, 2004 by three (3) Mineral County Sheriff Deputies who ordered the bar to cease all dance performances and ordered the dancers to leave.

T. Weston, Inc. ceased exotic entertainment at the bar on May 7, 2004.

## Contentions of the Parties

**Plaintiff:**

1) The Mineral County Commission did not have authority under West Virginia's enabling statute (§7-1-3jj) to enact its ordinance regulating The Location of Business Offering Exotic Entertainment.

2) Defendant's ordinance regulating The Location of Business Offering Exotic Entertainment imposes an impermissible prior restraint on Plaintiff in violation of

the First and Fourteenth Amendments to the Constitution of the United States.

**Defendants:**

1) Mineral County Commission had authority under West Virginia's enabling statutes §8-24 to enact its ordinance regulating The Location of Business Offering Exotic Entertainment.

2) Mineral County's ordinance regulating The Location of Business Offering Exotic Entertainment permissibly restricts expressive conduct that falls at the outer limit of constitutional protection particularly when balanced against the governmental interest of preventing societal harm associated with the conduct.

## Discussion

**Standing**

Neither party to this action raised the issue of standing to invoke the power of the federal courts. However, it is incumbent on the undersigned to address the issue sua sponte before reaching the merits of the case. Standing to raise the First Amendment issues is not readily apparent particularly since no 18-20 year old person aggrieved by the Mineral County ordinance or its enforcement is a party to the action.

"There are three requirements of Article III standing. First, the plaintiff must suffer an injury-in-fact. An injury in fact is an 'invasion of a legally protected interest' that is (a) concrete and particularized and (b) actual or imminent, i.e., not conjectural or hypothetical. Second, the injury must be 'fairly trace[able] to the challenged action of the defendant,' rather than some third party not before the court. Third, it must be likely that a favorable court decision will redress the injury of the plaintiff." (internal citations omitted). Essence, Inc. v. City of Federal Heights, 285 F.3d 1271, 1280 (10th Cir. 2002).

The burden of proving standing rests with the party invoking federal jurisdiction. The level of proof required to satisfy the burden varies depending on the stage the proceedings are at the time the decision is to be made. *Id.* at 1280.

The undersigned concludes T. Weston, Inc., has standing to challenge the Mineral County ordinance, including but not limited to the provision therein which has the effect of prohibiting 18 to 20 year olds from being on the premises of a business offering exotic entertainment. At the time of the passage and later enforcement of the county ordinance, Plaintiff had a license or permit to operate a bar featuring exotic entertainment. It was that license that was suspended by action of the Mineral County Commission through its prosecuting attorney and sheriff's department. Finally, any ruling by this Court that the portion of the statute that T. Weston, Inc. violated triggering revocation of its permit for one year (the injury) was unconstitutional or otherwise unenforceable would partially redress that injury. See also: <u>Deja Vu of Nashville, Inc. v. Metropolitan Government of Nashville and Davidson County</u>, 274 F.3d 377 (6th Cir. 2001).

**Authority To Enact**

West Virginia Code Chapter 7, Article 1, Section 3jj provides:

"(b) In the event a county has not created or designated a planning commission pursuant to the provisions of Article twenty-four, chapter eight of this code, a county commission may by order entered of record, adopt an ordinance that limits the areas of the county in which a business may offer 'exotic entertainment' as that term is defined in subsection (a) of this section."

Since Mineral County had a planning commission, Plaintiff argues the County Commission could not (had no legal authority to) enact the ordinance at issue.

On the other hand Defendant argues that West Virginia Code Chapter 7, Article 1, Section 3jj was enacted to give Counties that did not have a planning commission the opportunity to control

the location of places featuring exotic entertainment. According to Defendant, the legislature did not prohibit counties with a planning commission from exercising similar control over location of places featuring exotic entertainment. Provided the county's planning commission recommended an ordinance, the county commission was authorized to enact it. Defendant argues that in accord with West Virginia Code Chapter 8, Article 24, Section 42, the planning commission, in furtherance of "the public health, safety, comfort, morals, convenience and general public welfare ...", reported and recommended that the County Commission enact the ordinance in question as a zoning ordinance.

However, the reference to §7-1-3jj in the body of the ordinance as enacted[1], undermines Defendant's argument. Is this reference mere surplusage or is it the substance of the legislative underpinning for the enactment of the ordinance? Neither of the parties provided the undersigned with any authority to assist its analysis answering this question. The undersigned was not able to locate any helpful authority. Nor was the undersigned able to find any authority interpreting the following language from §7-1-3jj(b): "In the event a county has not created or designated a planning commission pursuant to the provisions of article twenty-four, chapter eight of this code, a county commission may, by order entered of record, adopt an ordinance that limits...." Without guidance, the undersigned interprets this statue strictly. The undersigned concludes the county commission does not have the authority under Chapter 7, Article 1, Section 3jj to pass an ordinance limiting the areas of the county in which a business may offer exotic entertainment if it has a planning commission  The West Virginia legislature could have inserted language to the effect: "*Notwithstanding any other provision of this code to the contrary, a county commission may, by*

---

[1] Mineral County Commission's Ordinance first whereas clause provides: "Whereas, West Virginia Code Chapter 7, Article 1, Section 3jj, grants authority to the County Commission to enact ordinances restricting the location of businesses offering exotic entertainment; ..."

*order entered of record, adopt an ordinance that limits the areas of the county in which a business may offer 'exotic entertainment' ..."* It did not do so.[2] In reaching the within conclusion the undersigned considered and rejected the notion that it was intended a county commission could elect to act under either statute's enabling authority. To do so ignores the plain language of the statute: "**has not** created or designated a planning commission...." (emphasis added).

To those who may argue that the county commission had authority to enact the ordinance in question under Chapter 8 and the reference in the ordinance mistakenly refers to Chapter 7 for legislative authority, the undersigned would point out that Chapter 8 requires a comprehensive plan. The ordinance in question was not part of a comprehensive plan but instead was a stand alone ordinance to control a single type of business: a business offering exotic entertainment. The undersigned cannot ignore the plain language chose by the county commission in drafting its ordinance clearly indicating that it drew its authority from Chapter 7, Article 1, Section 3jj for the enactment. It did not refer to its general powers or to Chapter 8.

**Authority To Regulate**

Plaintiff contends that the Defendant imposed a Constitutionally impermissible prior restraint on the Plaintiff. Plaintiff contends that the Defendant's restriction of 18 to 20 year old adults from viewing exotic entertainment under the guise of a zoning ordinance is a violation of their First Amendment rights.

---

[2]If the within report and recommendation is adopted by the District Judge and the within matter proceeds to a final hearing on the issue of whether there was a justified basis for imposing a prior restraint on adults between the age of 18 to 20 years from viewing exotic entertainment, the undersigned would further recommend that the question: "Is a county commission which has created a planning commission pursuant to Chapter 8 Article 24 of the West Virginia Code, precluded from adopting a county ordinance limiting the areas of the county in which a business by offer exotic entertainment pursuant to Chapter 7, Article 1, Section 3jj(b) of the Code? be certified to the West Virginia Supreme Court of Appeals.

While Plaintiff correctly cites New York Times Co. v. United States, 403 U.S. 713, 714 (1971)(per curium) for the proposition that: prior restraint comes to the bar "bearing a heavy presumption against its constitutional validity."  See also Southeastern Promotions, Ltd. v. Conrad, 420 U.S. 546, 558-559 (1975).

> The presumption against prior restraints is heavier and the degree of protection broader – than that against limits on expression imposed by criminal penalties. Behind the distinction is a theory deeply etched in our law: a free society prefers to punish the few who abuse rights of speech after they break the law than to throttle them and all others beforehand.

That is not to say prior restraint can never be imposed.  The "First Amendment generally bars government from dictating what we see, read, speak, or hear."  The "First Amendment protects not just political and ideological speech, but also live entertainment, including nude dancing and other performances involving nudity or other sexual elements."  Sometimes "[p]reservation of critical right of free speech requires protection of expression that some may dislike or even dispise." Giovani Carandola, Limited v. Bason, 303 F.3d 507 (4th Cir. 2002).  However, speech mixed with conduct as a form of expression does not enjoy the same level of constitutional protection as pure speech.  Government may restrict or even ban public nudity.  Justice O'Connor writing for the fragmented majority wrote "Being 'in a state of nudity' is not inherently expressive condition, but erotic nude dancing is 'expressive conduct,' within outer ambit of First Amendment's protection."  City of Erie v. Pap's A.M. dba "Kandyland", 529 U.S. 277 (2000).  The Court in Erie held that the ordinance in question banning all public nudity, even if it was accompanied by expressive activity, "was content- neutral regulation" and should be evaluated by the less stringent "O'Brien standard" for evaluation of symbolic speech.  The test to decide whether a regulation is to be evaluated under "O'Brien or a more stringent standard is: Was the governmental purpose in regulating expression unrelated to suppression of expression?  If it was, the O'Brien standard is to

be applied. The O'Brien standard requires the Court to determine whether the government regulation at issue is: 1) within the constitutional power of the government to enact; 2) whether regulation furthers important or substantial governmental interests; 3) whether government interest is unrelated to suppression of free expression; and 4) whether restriction is no greater than is essential to furtherance of the governmental interest.

In evaluating whether to apply the O'Brien standard to the Mineral County ordinance, the Plaintiff would have the undersigned accept that the sole purpose of enacting the ordinance was to run Plaintiff out of town thereby eliminating the only bar which is able to offer exotic entertainment because it was grand-fathered in by virtue of it being in operation before the ordinance was enacted. Under West Virginia law, existing uses of land, buildings and structures are protected from *ex post facto* changes in the law. Chapter 8, Article 24, Section 50 of the West Virginia Code. If the rationale behind the ordinance was to control the blight (crime, depression of property values) attendant to bars offering exotic entertainment, that may be a legitimate governmental purpose supporting enactment of restrictive legislation.

However, the second, third and fourth prongs of the O'Brien test are more problematic in the instant case. Since Plaintiff's business was grand-fathered in and not subject to being zoned out of business by a subsequent enactment, what is the important or substantial government interest which is promoted by excluding only 18 to 20 year old adults from attendance at a business that provides exotic entertainment? No such government interest is identified in the preamble to the ordinance in question or in the affidavit of the county coordinator, Michael C. Bland. Defendant argues there are secondary effects that pose threats to the community which justify the regulation and seeks an opportunity to be heard. Defendant argues a line of cases including City of Erie v. Pap's A.M. dba "Kandyland", *supra,* and City of Reton v. Playtime Theaters Inc., 475 U.S. 41

(1986) as examples of Federal Courts upholding ordinances of the type involved in the instant case because the ordinances "intend to restrict expressive conduct that falls within the outer ambit of constitutional protection, if there are restrictions on the time, place, and manner of presenting such expression, supported by a governmental interest in preventing harm associated with the secondary affects of presenting exotic entertainment."  Neither of these cases involved a restriction on a subclass of people as a means to the end of preventing the harm (secondary effects) associated with the presentation of exotic entertainment.  The subclass in the instant case is that portion of the adult population falling between the ages of 18 and 21 years of age. No where in the ordinance is a secondary effect identified with respect to the subclass.

In the only case which comes close to addressing the issue, <u>Essence, Inc. v. The City of Federal Heights</u>, 285 F.3d 1272 (10th Cir. 2002), the Court held: "Provision of ordinance prohibiting anyone under the age of 21 from being on the premises of a business offering live nude dancing violated the First Amendment, even if it was content neutral, as city did not demonstrate that the regulation furthered an important or substantial government interest; though city asserted it had an interest in combating the harmful secondary effects flowing from nude dancing, including a decrease in property values, an increase in crime, and sexually transmitted diseases, and offered undisputed evidence that secondary effects have resulted and will result from nude dancing clubs, mayor pro tem merely opined in a conclusory fashion that the age restriction furthered the city's interest, and did not provide a factual basis for that conclusion."  That is precisely the situation before this Court. Even counsel for Defendant concedes the within matter is a case of first impression for the Northern District of West Virginia and the Fourth Circuit.  Defendant's Memorandum In Opposition To Plaintiff's Motion For Temporary Restraining Order and Preliminary Injunction p. 9 (DE 11).

In recommending the grant of a temporary injunction, the undersigned does not conclude that

Defendant cannot provide evidence to support its selection of a subclass of adults to preclude from establishments providing exotic entertainment. The undersigned merely recommends a holding that the county has not done so to this point notwithstanding being given the opportunity to do so at the January 10, 2005 hearing. There is strong likelihood there is no support for what appears to be an arbitrary selection by Mineral County of 18 to 20 year old adults for exclusion given the current state of society. The undersigned considered not only the absence of such justification in the preamble to the ordinance in question and in the affidavit of Michael C. Bland, County Coordinator of Mineral County dated August 19, 2004 and submitted as an exhibit to Defendant's Memorandum In Opposition To Plaintiff's Motion For Temporary Restraining Order and Preliminary Injunction, but also the apparent over breadth of the legislation in criminalizing conduct of the business operator but not the 18 to 20 year old participant.

The undersigned further concludes that it is likely the Plaintiff will prevail on it's challenge including it's over breadth challenge to the Mineral County ordinance.

**Preliminary Injunctive Relief**

The Fourth Circuit has recognized that "preliminary injunctions are extraordinary remedies involving the exercise of a very far-reaching power to be granted only sparingly and in limited circumstances." Microstrategy Inc. v. Motorola, Inc., 245 F.3d 335, 339 (4th Cir. 200)(*quoting* Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 816 (4th Cir. 1992)(internal quotation marks omitted).

In Blackwelder Furniture Co. v. Seilig Mfg. Co., Inc., 550 F.2d 802 (4th Cir. 1977), Rum Creek Coal Sales, Inc. v. Caperton, 926 F.2d 353 (4th Cir. 1991) and Direx Israel, Ltd. v. Breakthrough Medical Corp., 952 F.2d 802 (4th Cir. 1991), the Fourth Circuit established four factors which courts must consider in granting a preliminary injunction. Those factors are:

> (1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied; (2) the likelihood of harm to the defendant if the requested relief is granted; (3) the likelihood that the plaintiff will succeed on the merits, and (4) the public interest. Direx Israel, 952 F.2d at 812 (citing Rum Creek, 926 F.2d at 359).

Additionally, the "[p]laintiff bears the burden of establishing that each of these factors supports granting the injunction." *Id.*, (*quoting* Technical Publishing Co. v. Lebhar-Friedman, Inc., 729 F.2d 1136, 1139 (7th Cir. 1984).

In evaluating the relative importance of each of the factors, the Direx Israel court held that, "[t]he 'likelihood of irreparable harm to the plaintiff' is the first factor to be considered in this connection." *Id*. The Direx Israel court continued that if the plaintiff makes 'a clear showing' of irreparable injury absent preliminary injunctive relief," a district court must then balance the likelihood of irreparable harm to the plaintiff without an injunction against the likelihood of harm to the defendant with an injunction. *Id*; *see also* Blackwelder, 550 F.2d at 195. Then, if after weighing the respective harms, the balance weighs in plaintiff's favor, the plaintiff need not show a likelihood of success; plaintiff need only show that grave or serious questions are presented by plaintiff's claim. *Id.* at 195-196; *see also* James Merritt & Sons v. Marsh, 791 F.2d 328, 330 (4th Cir. 1986). Although particular attention appears to be given to the first of the three factors, the Fourth Circuit has also made clear that, "[a]lways, of course, the public interest should be considered." Blackweilder, 550 F.2d at 196. However, as the Blackweilder court continued, "[t]he two more important factors are those of probable irreparable injury to plaintiff without a decree and of likely harm to the defendant with the decree." *Id*.

The issuance of a preliminary injunction is committed to the sound discretion of the district court. Conservation Council of North Carolina v. Costanzo, 505 F.2d 498, 502 (4th Cir. 1974).

Pursuant to the Federal Magistrates Act, the majority of federal courts have taken the position that the Act authorizes the reference of a pretrial motion seeking injunctive relief to a magistrate judge to conduct hearings, and submit to the district judge a report containing proposed findings of fact and recommendations for disposition, but not a determination or entering of judgment. *See* Jeffrey v. State Board of Education, 896 F.2d 507 (Ga, 1990)(holding that a federal magistrate judge had properly conducted a pretrial hearing regarding the request for preliminary injunction within his jurisdiction under § 636(b)(1)(B) of the Federal Magistrates Act); Fink v. Ylst, 1995 US App LEXIS 20575 (9th Cir., 1995)(unpublished)(attached); Berry v. McBride, 86 Fed, Appx. 620 (4th Cir. 2004)(unpublished)(attached).

If a preliminary injunction is granted, the order granting the same must "set forth the reasons for its issuance; shall be specific in terms; [and] shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts to be restrained. *See* Fed.R.Civ.P. 65(d).

The Supreme Court has held that "[f]ederal courts must hesitate before resolving a controversy, even one within their constitutional power to resolve, on the basis of the rights of third persons not parties to the litigation." Singleton v. Wulff, 96 S. Ct. 2868, 2874 (1976). The reasons for this, the Court explains, are two. First, courts should refrain from adjudicating matters unnecessarily, and it may be that the actual holder of the right at issue does not wish to assert it. Id. Second, the party that in fact holds the right will likely be the best proponent for it. Id.

The Court does go on to recognize this proposition as a general rule and notes that exceptions may be warranted in some cases based upon the relationship between the party attempting to assert the right and the non-party who holds the right. "If the enjoyment of the right is inextricably bound up with the activity the litigant wishes to pursue, the court can be sure that its construction of the right is not unnecessary in the sense that the right's enjoyment will be unaffected by the outcome of the suit." Id. Furthermore, the relationship between the litigant and the third party may be such

that the litigant would be an equally effective advocate for the right. Id.

Applying the four pronged test of Blackwelder to the instant case, the undersigned concludes:

1) There is strong likelihood of irreparable harm to Plaintiff unless a temporary injunction is granted. As stated by Circuit Judge Motz in Giovani Carandola, Limited v. Bason, *supra* at 520-521, the "loss of First Amendment rights, for even minimal periods of time, unquestionably constitutes irreparable injury." See also Elrod v. Burns, 427 U.S. 347, 373 (1976). Although Plaintiff operated its business in Mineral County between late 2001 and 2004, it has been out of operation since the Mineral County Prosecutor cause three sheriff's deputies to shut it down and order its dancers out on May 7, 2004.

2) There is virtually no harm to Defendant if the temporary injunction as proposed is granted because:

   a) Defendant still has right to a future evidentiary hearing to show cause if it can why the temporary injunction if granted should not be made permanent, notwithstanding the fact that it declined to present any evidence at the January 10, 2005 hearing.

   b) The unconstitutional provisions of its ordinance are severable from the unchallenged provisions of the ordinance and the provisions of the ordinance not severed or enjoined may be enforced. See severability clause in the ordinance and Louk v. Cormier, M.D., 2005 WL 1545271 (WV 2005).

3) If the underlying basis for the ordinance is some alleged disruption secondary to 18 to 20 year olds viewing exotic entertainment, such disruption, insofar as it may be criminal in nature, is controlled and punishable by state statutes specific to certain conduct (eg. DUI; underage drinking; assault; sexual assault; etc.).

   In other words, Defendant has other means to reach its end without trampling on the First Amendment Rights of a subclass of adults.

4) As determined in the sections of this opinion/report and recommendation subtitled: Standing; Authority to Enact and Authority to Regulate, there is strong likelihood that Plaintiff will

prevail in this action.

5) Finally, the public has a strong interest in protection of it's First Amendment rights that is paramount to the Mineral County's yet to be specified interests in limiting or precluding a subclass of the adult public from enjoyment of those rights.

## **RECOMMENDATION**

For the foregoing reasons, the undersigned **RECOMMENDS :**

1) That Defendant(s) be temporarily enjoined from enforcing:

   Section 5 (A) (6) insofar and insofar only as the refusal to issue a permit is based on an alleged violation of Section 8 (F) or Section 14 (A), (B) or (C)

   Section 8 (F)

   Section 14 (A), (B) and (C)

   of the Mineral County Ordinance Regulating the Location of Businesses Offering Exotic Entertainment enacted November 2, 2002.

2) That Defendant be prohibited from denying Plaintiff a location permit for the operation of its business at the same location as it was operating on May 7, 2004.

3) That the question: "Is a county commission which has created a planning commission pursuant to Chapter 8 Article 24 of the West Virginia Code, precluded from adopting a county ordinance limiting the areas of the county in which a business by offer exotic entertainment pursuant to Chapter 7, Article 1, Section 3jj(b) of the Code?"

4) That, upon resolution of the certified question, a full trial of the within matter be scheduled and a determination made whether the temporary injunction issued, if any, shall be permanent.

Any party may, within ten (10) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Opinion/Report and Recommendation for Disposition to which objection is made and the basis for such objection. A copy of such objections should also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to the Opinion/Report and

Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Opinion/Report and Recommendation. 28 U.S.C. § 636(b)(1); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *Thomas v. Arn*, 474 U.S. 140 (1985).

The Clerk of the United States District Court for the Northern District of West Virginia is directed to provide copies to all counsel of record.

Dated: September 5, 2005

/s *John S. Kaull*

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE