IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

T. Weston, Inc.
DBA Ridgeley Saloon,

    Plaintiff,

v.                                        Case No. 2:04CV56

Mineral County, West Virginia
and County Commission of
Mineral County, West Virginia, et al.,

    Defendants.

**OPINION/REPORT AND RECOMMENDATION**

This matter is before the undersigned United States Magistrate Judge pursuant to Plaintiff's "Motion for Summary Judgment on Counts I, II, and III of the Amended Complaint, and for Summary Judgment on Liability Only on Counts IV, VI, and VII of the Amended Complaint against Mineral County, West Virginia and County Commission of Mineral County West Virginia" filed on July 13, 2007 [Docket Entries 42 and 43]. Defendants did not file a dispositive motion, nor did any defendant file any response to Plaintiff's Motion. This motion has been referred to the undersigned United States Magistrate Judge by the Honorable Robert E. Maxwell, United States District Judge for the Northern District of West Virginia for Report and Recommendation.

**Procedural History**

On August 11, 2004, Plaintiff, T. Weston, Inc., d/b/a Ridgeley Saloon, ("Plaintiff") filed its "Verified Complaint for Temporary Restraining Order, Declaratory Judgment, Preliminary Injunction, Permanent Injunction, Compensatory Damages and Attorney's Fees" [Docket Entry 1]. On August 25, 2004, and before an answer was filed, Plaintiff filed a "First Amended Complaint for Temporary Restraining Order, Declaratory Judgment, Preliminary Injunction, Permanent Injunction,

Compensatory and Punitive Damages and Attorney's Fees" [Docket Entry 12]. In Count I Plaintiff claims entitlement to a temporary restraining order, preliminary injunction and permanent injunction. In Count II, Plaintiff claims entitlement to a declaration that the Mineral County Ordinance Regulating the Location of Businesses Offering Exotic Entertainment is unconstitutional on its face and as applied. In Count III, Plaintiff alleges he is entitled to a temporary restraining order, preliminary injunction and a permanent injunction. In Count IV, Plaintiff alleges that Defendants' conduct caused him to suffer financial and economic injury including loss of revenue and profits as well as the loss of his constitutional rights and claims he is therefore entitled to recover compensatory damages against Defendants for the injury caused by Defendant' conduct. In Count V, Plaintiff claims he is entitled to recover punitive damages against Defendants. In Count VI, Plaintiff claims entitlement to a declaration that the Mineral County Ordinance Regulating the Location of Businesses Offering Exotic Entertainment was enacted in violation of the laws of West Virginia and as such is a nullity affording no authority for Defendants' conduct; to a temporary restraining order; preliminary injunction; and a permanent injunction; as well as compensatory damages and punitive damages. In Count VII, Plaintiff claims entitlement to a declaration that the Mineral County Ordinance Regulating the Location of Businesses Offering Exotic Entertainment was enacted in violation of the laws of West Virginia and as such is a nullity affording no authority for Defendant's conduct; to a temporary restraining order; preliminary injunction and permanent injunction; to compensatory damages and to punitive damages.

On August 19, 2004, came the parties for hearing on Plaintiff's Motion for a Temporary Restraining Order ("TRO"), whereupon the Honorable Robert E. Maxwell Ordered as follows, in pertinent part:

In this case, the Court finds ultimately persuasive the fact that approximately 3 ½

months have passed from the date the alleged harm began to accrue (May 7, 2004) to the filing of the action herein. The Court finds that, in <u>Quince Orchard Valley Citizens Ass'n. vs. Hodel</u>, 872 F.2d 75 (4th Cir. 1989) and a number of other cases, the Federal Courts have held that inordinate delay in bringing a petition for injunctive relief may be considered by the Court when determining whether the party seeking the relief will be immediately irreparably harmed if it is not granted. The Court finds that the 3 ½ month delay which occurred in this case is indicative of a lack of immediate irreparable harm suffered by the Plaintiff, and this fact tips the balance of the hardship balancing tests in favor of denying the relief.

WHEREFORE, the Plaintiff's Motion for Temporary Restraining Order shall be and hereby is DENIED, with the Plaintiffs['] exceptions and objections thereto noted.

The Court further finds that the plaintiff seeks a preliminary injunction as a portion of their [sic] ultimate claim for relief herein, and it is appropriate to establish a briefing schedule for the parties to further address whether a preliminary injunction should issue as a portion of the relief sought herein.

Defendants then filed an Answer to the Amended Complaint on September 14, 2004, as well as a "Supplemental Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction" [Docket Entry 16]. Plaintiff filed a "Sur-Reply Brief Supporting its Motion for Preliminary Injunction" on September 24, 2004 [Docket Entry 17].

On January 5, 2005, the District Court referred Plaintiff's Motion for Preliminary Injunction, the pretrial development of the case, the development of a scheduling order, and any dispositive or non-dispositive motions to the undersigned United States Magistrate Judge [Docket Entry 18]. A hearing on the motions was held on January 27, 2005, and a supplemental factual stipulation was filed with the Court on February 1, 2005.

On September 6, 2005, the undersigned United States Magistrate Judge entered an Opinion/Report and Recommendation recommending to the District Court that:

1) Defendants be temporarily enjoined from enforcing Section 5(A)(6) insofar and insofar only as the refusal to issue a permit is based on an alleged violation of Section 8(F) or Section 14(A), (B) or (C) of the Mineral County Ordinance Regulating the Location of Businesses

Offering Exotic Entertainment enacted November 2, 2002.

2)   Defendants be prohibited from denying Plaintiff a location permit for the operation of its business at the same location as it was operating on May 7, 2004.

3)   The question: "Is a county commission which has created a planning commission pursuant to Chapter 8 Article 24 of the West Virginia Code precluded from adopting a county ordinance limiting the areas of the county in which a business may offer exotic entertainment pursuant to Chapter 7, Article 1, Section 3jj(b) of the Code?" be certified to the West Virginia Supreme Court of Appeals; and

4)   Upon resolution of the certified question, a full trial of the within matter be scheduled and a determination made whether the temporary injunction issued, if any, shall be permanent.

The Report and Recommendation expressly included language directing the parties to file with the Clerk and the District Judge, within ten (10) days, any written objections to the Report and Recommendation. The Report and Recommendation further advised the parties that failure to timely file any such objections would result in waiver of the right to appeal from a judgment of the Court based upon the Report and Recommendation. Neither party filed any objections to the Report and Recommendation.

On September 30, 2005, the Honorable Robert E. Maxwell, United States District Judge, entered an Order accepting and adopting in whole the September 6, 2005, Report and Recommendation. Pursuant to its Order, the District Court certified the following question to the West Virginia Supreme Court of Appeals:

> Is a county commission which has created a planning commission pursuant to Chapter 8, Article 24 of the West Virginia Code, precluded from adopting a county ordinance limiting the areas of the county in which a business may offer exotic entertainment pursuant to Chapter 7, Article 1, Section 3jj(b) of the Code?

On June 29, 2006, the West Virginia Supreme Court of Appeals answered the above Certified Question in the affirmative – that is:

> We hold that a county commission that has created a planning commission pursuant to *W.Va. Code*, 8-24-1, *et seq*. does not have authority under *W. Va. Code*, 7-1-3jj(b) [2002] to adopt a county ordinance limiting the areas of the county in which a business may offer exotic entertainment.[1]

A Scheduling Order was thereafter entered by the District Court in this matter on December 8, 2006. The Scheduling Order was later modified by the Court at the request of the parties to extend the deadline for discovery until June 15, 2007, and for dispositive motions until July 13, 2007.

On July 13, 2007, Plaintiff filed its "Motion for Summary Judgment on counts I, II, and III of the Amended Complaint, and for Summary Judgment on Liability Only on Counts IV, VI, and VII of the Amended Complaint against Mineral County, West Virginia and County Commission of Mineral County West Virginia" [Docket Entries 42 and 43]. Defendants did not file a dispositive motion, nor did any defendant file any response to Plaintiff's Motion.

## **Statement of Facts**

The relevant facts are not in dispute.

Plaintiff opened a night club in Ridgeley, West Virginia on July 1, 2001. The night club featured exotic entertainment in the form of semi-nude and nude dancing.

The West Virginia Legislature passed Chapter 7, Article 1, Section 3jj which in pertinent part provides:

> (b) In the event a county has not created or designated a planning commission pursuant to the provisions of Article twenty-four, chapter eight of this code, a county commission may by order entered of record, adopt an ordinance that limits the areas of the county in which a business may offer 'exotic entertainment' as that term is defined in subsection (a) of this section.

---

[1]The Court notes that Justice Benjamin dissented to the Majority's opinion.

During the period in question Mineral County did have a Planning Commission.

A little over one year later on November 6, 2002, the Mineral County Planning Commission recommended an ordinance to the Mineral County Commission which regulated The Location of Business Offering Exotic Entertainment. The Mineral County Commission passed the ordinance on November 20, 2002. The Ordinance , entitled "Ordinance Regulating the Location of Businesses Offering Exotic Entertainment," provides in pertinent part:

> WHEREAS, West Virginia Code Chapter 7, Article 1, Section 3jj, grants authority to the County Commission to enact ordinances restricting the location of businesses offering exotic entertainment . . . .
> Section 3:
>
> (A) It shall be unlawful for any person to establish a business offering exotic entertainment without first obtaining a valid location permit issued by the Administrator.
>
> Section 4:
>
> Any business offering exotic entertainment established prior to the effective date of this Ordinance shall be required to obtain a location permit. An application by such business shall be treated as a renewal and shall not be required to Complete Section 3, Item E of the application process, unless said business is proposing to change the location or expand the business at the existing location. All provisions of this Ordinance shall fully apply to an existing business offering exotic entertainment, except for the location restrictions contained in Section 10.
>
> Section 5:
>
> The Administrator shall approve the issuance of a permit to an applicant within thirty (30) days after receipt of a complete application unless he finds one or more of the following to be true . . . .
>
> Section 8:
>
> The Administrator shall revoke a permit if he determines that: . . . .
>
> (F) a permitee or any employee of the permitted establishment knowingly allowed a person under 21 years of age to enter the establishment during hours of operation; . . . .
>
> When the Administrator revokes a permit and / or license the revocation shall continue for a period of one year and the permitee and / or any person listed on the original application form shall not be issued a new location permit for one year from the date the revocation

became effective. Any re-application shall be considered a new application and shall be required to comply with all location standards applicable at that time.

Section 14:

(A) It shall be unlawful to permit any person younger than twenty-one (21) years of age, entry into or to be on the premises of a business offering exotic entertainment at any time said establishment is open for business.

(B) It shall be the requirement of the operator of each business offering exotic entertainment to ensure that an attendant is stationed at each public entrance to the business offering exotic entertainment at all times during regular business hours.

(C) It shall be the responsibility and duty of the attendant to prohibit any person under the age of twenty-one (21) years from entering the business offering exotic entertainment.

Section 18:

Any person violating any provision of this Ordinance shall in addition to any other actions, which may be taken by the Administrator, The Mineral County Planning Commission or the Mineral County Commission, hereunder, shall be fined not more than one thousand dollars ($1,000) or imprisoned not more than thirty (30) days or both.

Section 19:

Any person adversely affected by any provisions of this Ordinance is entitled to seek direct judicial review before the Circuit Court of Mineral County with regard as to whether the Ordinance impermissibly burdens his or her right to establish or operate a business offering exotic entertainment.

The Mineral County Commission notified T. Weston, Inc. on January 8, 2003 of the passage of the county ordinance and of the obligation to complete and file an application in order to continue business operations.

T. Weston, Inc. completed and submitted its application and fees to continue business operations at the Ridgeley Saloon. T. Weston, Inc. heard nothing from the County Commission relative to its 2003 application. T. Weston, Inc. filed a similar application and fee for 2004, and again heard nothing from the County Commission.

During the time period of the dispute, Mineral County did not have an "Administrator."

Lynn A. Nelson, Mineral County, West Virginia Prosecuting Attorney wrote Erickson of T.Weston, Inc. on May 6, 2004 advising:

> [E]ffective immediately your permit to operate a business offering exotic entertainment in Mineral County, West Virginia is hereby revoked pursuant to Section 14 of the County Ordinance. Section 14 prohibits persons under twenty-one from being on the premises during business hours. Such a violation requires mandatory revocation of your permit pursuant to Section 8.
>
> The facts supporting this violation are that on April 17, 2004 you knowingly allowed two (2) twenty year olds whom were accompanied by undercover deputies of the Mineral County Sheriff's Department into the establishment during business hours. Both individuals were carded and allowed to enter.
>
> Therefore, you must stop all exotic entertainment immediately. Failure to do so will result in criminal charges being filed against you and an injunction filed in the Circuit Court of Mineral County. You can rest assured that we will follow up to insure compliance with this letter.

The Prosecuting Attorney's letter was delivered to T. Weston, Inc. on May 7, 2004, by three (3) Mineral County Sheriff Deputies who ordered the bar to cease all dance performances and ordered the dancers to leave.[2]

T. Weston, Inc. ceased exotic entertainment at the bar on May 7, 2004.

## Contentions of the Parties

**Plaintiff:**

1) The Mineral County Ordinance prohibiting adults between the ages of 18 and 21 on the premises of an adult entertainment establishment is unconstitutional under the First and Fourteenth Amendments.

2) Defendants violated Plaintiff's right to due process under the Fourteenth Amendment to the United States Constitution when they revoked Plaintiff's permit to present

---

[2]There is a dispute as to whether the deputies ordered the dancers to stop dancing and leave or the manager of the club did so. The undersigned finds this issue of fact is not material to the determination of this matter.

> constitutionally protected expression without procedural due process under the county ordinance.

3) Unless a law that requires a license or permit to engage in activity protected by the fist Amendment: (a) provides for a prompt decision as to whether the license or permit will issue, (b) provides for prompt judicial review in the event of a denial, and (c) removes discretion from officials in deciding whether to grant a license, it imposes a prior restraint and is unconstitutional under the First Amendment; the Mineral County ordinance suffers from all these defects.

4) As a matter of State law the Mineral County ordinance is a nullity and cannot be applied to Plaintiff's pre-existing use.

5) Plaintiff is entitled to a judgment declaring the Mineral County ordinance unconstitutional under the first and Fourteenth Amendments, a permanent injunction against its enforcement, and monetary damages, the amount of which is to be determined at trial, to compensate it for injuries it has suffered as a result of Defendants' violations of its rights.

**Defendants:**

As already noted, Defendants neither filed any dispositive motions of their own, nor did they respond to Plaintiff's motion. Further, the undersigned finds Defendants' previous arguments against the Preliminary Injunction in this matter were resolved in Plaintiff's favor in the Report and Recommendation regarding the Preliminary Injunction, to which there was no objection. That Report and Recommendation was then adopted in whole by the District Judge. For that reason alone, Plaintiff's motion should be granted.

### Standard of Review

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477

9

U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

In <u>Celotex</u>, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. <u>Celotex</u>, 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." <u>Matsushita Electric Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. <u>Id.</u> This means that the party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.' <u>Anderson</u>, 477 U.S. at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. <u>Id.</u> at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." <u>Matsushita</u>, 475 U.S. at 587.

## **Discussion**

Here Plaintiff has "carried its burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact." Defendants did not, however, however, respond to Plaintiff's motion and have not "present[ed] specific facts showing the existence of a genuine issue for trial." Again, for this reason alone, the undersigned finds Plaintiff's motion for summary judgment on the issue of the validity of the ordinance at issue and injunctive relief as requested in Counts Six and Seven of the Amended Complaint should be granted. As further discussed

below, however, the undersigned also finds the record as a whole does not lead to a finding for Defendants on the issue of liability.

The Whereas clause in the ordinance at issue specifically and expressly states the authority to enact the ordinance is found in West Virginia Code Chapter 7, Article 1, Section 3jj. Defendants had originally argued that §7-1-3jj authorized the Commission to enact the ordinance. This Court went so far as to certify the question to the West Virginia Supreme Court of Appeals, which expressly held that 7-1-3jj did not confer authority on the Mineral County Commission to enact the ordinance.

Defendants next argued that, "despite its misleading citation to West Virginia Code §7-1-3jj, the ordinance in question is a zoning ordinance originated by the Planning Commission of Mineral County, and adopted by vote of the Mineral County Commission pursuant to statutory authority created in the former Chapter 8, Article 24 of the West Virginia Code." As the undersigned found in the Report and Recommendation regarding the Preliminary Injunction, however:

> The undersigned cannot ignore the plain language chose[n] by the county commission in drafting its ordinance clearly indicating that it drew its authority from Chapter 7, Article 1, Section 3jj for the enactment. It did not refer to its general powers or to Chapter 8.

Further, as the undersigned also already found, Chapter 8, Article 24 of the West Virginia Code also did not confer authority on the Mineral County Commission because Chapter 8 requires a comprehensive plan and Mineral County has not shown that it had a comprehensive plan.[3] This

---

[3] § 8A-a1-1 provides: "'Comprehensive plan' means a plan for physical development, including land use, adopted by a governing body, setting forth guidelines, goals and objective for all activities that affect growth and development in the governing body's jurisdiction."
8A-3-1 provides:
> (a) The general purpose of a comprehensive plan is to guide a governing body to accomplish a coordinated and compatible development of land and improvements within its territorial jurisdiction, in accordance with present and future needs and resources.
> (b) A comprehensive plan is a process through which citizen participation and

11

finding is supported by <u>Lower Donnally Association v. Charleston Municipal Planning Commission and the City of Charleston, West Virginia</u>, 575 S.E.2d 233 (W. Va. 2002), in which the West Virginia Supreme Court of Appeals stated:

> The governing body of every municipality . . . may by ordinance create a planning commission in order to promote the orderly development of its governmental units and

---

> thorough analysis are used to develop a set of strategies that establish as clearly and practically as possible the best and most appropriate future development of the are under the jurisdiction of the planning commission. A comprehensive plan aids the planning commission in designing and recommending to the governing body ordinances that result in preserving and enhancing the unique quality of life and culture in that community and in adapting to future changes of use of an economic, physical or social nature. A comprehensive plan guides the planning commission in the performance of its duties to help achieve sound planning.
> (c) A comprehensive plan must promote the health, safety, morals, order, convenience, prosperity and general welfare of the inhabitants, as well as efficiency and economy in the process of development.
> (d) the purpose of a comprehensive plan is to:
> > (1) Set goals and objective for land development, uses and suitability for a governing body, so a governing body can make an informed decision;
> > (2) ensure that the elements in the comprehensive plan are consistent;
> > (3) coordinate all governing bodies, units of government and other planning commissions to ensure that all comprehensive plans and future development are compatible;
> > (4) Create conditions favorable to health, safety, mobility, transportation, prosperity, civic activities, recreational, educational, cultural opportunities and historic resources;
> > (5) Reduce the waste of physical, financial, natural or human resources which result from haphazard development, congestion or scattering of population;
> > (6) Reduce the destruction or demolition of historic sites and other resources by reusing land and buildings and revitalizing areas;
> > (7) Promote a sense of community, character and identity;
> > (8) Promote the efficient utilization of natural resources, rural land, agricultural land and scenic areas;
> (9) focus development in existing developed areas and fill in vacant or underused land near existing developed areas to create well designed and coordinated communities; and
> (10) Promote cost-effective development of community facilities and services.

its environs. . . . In accomplishing this objective, it is intended that the planning commission shall serve in an advisory capacity to the governing body of a municipality . . . .W.Va. Code § 8-24-1 (1969) . . . . The responsibilities of planning commissions are further defined in or by means authorized in the enabling legislation, as manifested throughout the following discussion:

The 1959 legislative scheme for full implementation of the planning and zoning activities of cities and counties contemplates an initial adoption of a comprehensive plan for a city or county, the consequent development of subdivision regulations and their adoption, followed by a zoning ordinance drawn in accord with the comprehensive plan. The statute lays out detailed provisions for how the zoning ordinance and comprehensive plan thus adopted by a city may thereafter be amended. The enabling statute also contains some specific requirements for how each part of the planning and zoning scheme is to be administered, including a separate procedure for obtaining a permit to improve specific locations in accord with the comprehensive plan previously adopted . . . .

[T]he statute vests in the planning commission the duty to prepare the comprehensive plan after possible consideration of a long list of factors . . . and requires that any amendment to the plan after it has been adopted be considered under the procedures set forth in the statute for the initial adoption of the comprehensive plan . . . The final adoption of the comprehensive plan is left to the city or county commission . . . .

See also Freelance Entertainment, L.L.C. v. Sanders, 280 F. Supp. 533 (N.D. Miss. 2003), which, in a similar case, stated:

Zoning regulations which restrict, rather than ban, the location of adult entertainment businesses throughout a jurisdiction, and are "designed to combat the secondary effects of such businesses," rather than to constraint the content of their speech *per se*, are considered time, place, and manner regulations. . . . Time, place, and manner restrictions, by their nature, require the exercise of a local government's "zoning" authority. Under § M17-1-9 M.C.A., zoning regulations must be made in accordance with a comprehensive plan . . . .

In this case, Lowndes County's Ordinance not only includes a detailed description of what dancers and patrons can and cannot do within regulated establishments, but also dictates where such establishments may be located . . . . This element of the Ordinance brings it within the purview of a land-use restriction. Under Mississippi law, the local government is required to adopt such restrictions in accordance with a comprehensive zoning plan. . . . .The Ordinance enacted by Lowndes County, as it currently stands, bears no such relation to a comprehensive plan. It lacks the minimum elements required by §17-1-1(c) . . . .The court concludes that Lowndes County's ordinance can be adopted only as part of a comprehensive scheme of plan or zoning affecting the entire county. Since the Ordinance fails to comply with this State's statutes, it is,

13

therefore, invalid.

As the court determined in Sanders, the undersigned also concludes that Chapter 8 requires a comprehensive plan and the Mineral County Commission has not shown that it has adopted a comprehensive plan. The undersigned finds the ordinance in question was not part of a comprehensive plan but instead was a stand-alone ordinance. Since the ordinance fails to comply with the State statute, it is, therefore, invalid.

Finally, Defendants amended their argument once again, contending that "although the county commission incorrectly cited W. Va. § 7-1-3jj, it does not depend upon that authority for either part of the ordinance. The licensing provisions derive from the county's police powers and the zoning provisions are authorized by Chapter 8, Article 24 (prior to March 24, 2004) and Chapter 8A, Articles 1-12 (after March 13, 2004) of the West Virginia State Code."

Again, as stated in the Report and Recommendation filed September 6, 2005, recommending the granting of the preliminary injunction, "[t]he undersigned cannot ignore the plain language chose[n] by the county commission in drafting its ordinance clearly indicating that it drew its authority from Chapter 7, Article 1, Section 3jj for the enactment. It did not refer to its general powers or to Chapter 8." Again, there was no objection to this Report and Recommendation and it was adopted in whole by the District Court.

Although not precedential, the undersigned finds the case of Northshor Experience, Inc. v. City of Duluth, MN, 442 F. Supp. 2d 713 (D. Minn. 2006) instructive. In that case the Plaintiffs argued that the Ordinance at issue was a zoning ordinance and therefore must follow the procedural dictates of the state Municipal Planning Act. Defendants responded, as did Defendants here, that the ordinance was not a zoning ordinance, but that:

[The ordinance is] an exercise of its police powers to control a public nuisance. Duluth

argues that its ordinance is not a zoning ordinance because it does not implement a comprehensive plan or create zones or districts of uses . . . . The Court concludes that Duluth Ordinance 9781 is a zoning ordinance. The MPA itself explains the definition of zoning as follows:

Authority for zoning. For the purpose of promoting the public health, safety, morals, and general welfare, a municipality may by ordinance regulate on the earth's surface, . . . the location, . . . of buildings and other structures for trade, industry, residence, recreation, public activities, or other purposes, and the uses of land for trade, industry, residence, recreation, . . . and may establish standards and procedures regulating such uses . . . . The ordinance embodying these regulations shall be known as the zoning ordinance and shall consist of text and maps . . . .Ordinance 9781 regulates the location and uses of buildings on the earth's surface and establishes standards and procedures regulating such uses. It is a "zoning ordinance" within the definition of the MPA. See also Fifth Column v. Village of Valley View Ohio, 100 F. Supp. 2d 493, 503-506 (N.D.Ohio 1998)(holding that ordinance limiting placement of adult dancing establishments by imposing distance restrictions was a "zoning ordinance" subject to the procedural requirements of the state statute because the ordinance had "the actual and intended effect of limiting how a piece of property may be used, depending on its location; "police power includes the power to regulate land use through zoning and districting ordinances;" and the Supreme Court has characterized distance restrictions on adult uses as "zoning ordinances"), aff'd., 221 F.3d 13134 (6th Cir. 2000). . . .

Ordinance 9781 is a zoning ordinance, and there is no assertion that Duluth complied with the MPA when enacting it . . . .Because the Ordinance [] was enacted in violation of the MPA, it is invalid and unenforceable. The Court does not reach Northshor's claims that the ordinance is otherwise illegal and unconstitutional . . . .

In the present case, the undersigned finds, as did the Court in Northshor, that the ordinance at issue is a zoning ordinance, subject to the procedural requirements of the state statute because it had "the actual and intended effect of limiting how a piece of property may be used, depending on its location . . . . ." Id.

For all the above reasons, the undersigned United States Magistrate judge finds there is no genuine issue of material fact in dispute regarding the issue of the authority to enact the ordinance at issue, and that the ordinance was invalid and unenforceable *ab initio*. The Court need not and does not reach Plaintiff's claims that the ordinance is otherwise illegal and unconstitutional.

## **RECOMMENDATION**

The undersigned therefore **RECOMMENDS** Summary Judgment be **GRANTED IN PART** in favor of Plaintiff on the issue of liability as alleged in Counts VI and VII of Plaintiff's Amended Complaint. It follows that Plaintiff's claims in Counts I, II and III of the Amended Complaint seeking a permanent injunction preventing enforcement of the ordinance against it should also be **GRANTED IN PART** on the grounds that the ordinance was enacted in violation of West Virginia law[4].

For the reasons above stated, the undersigned further recommends "Plaintiff's Motion for Summary Judgment on VI and VII of the Amended Complaint against Mineral County, West Virginia and County Commission of Mineral County West Virginia" filed on July 13, 2007 [Docket Entries 42 and 43], insofar as the same seeks permanent injunctive relief based on the grounds that the ordinance was enacted in violation of West Virginia law, be **GRANTED IN PART**. For the reasons herein stated, the undersigned recommends that Plaintiff's Motion for Summary Judgment with respect to the issues under Counts I, II, and III of the Amended Complaint be **GRANTED IN PART** insofar as the same seeks permanent injunctive relief against the enforcement of the ordinance based upon the grounds that the same was enacted in violation of West Virginia law. For the reasons herein stated, the undersigned recommends that Plaintiff's Motion for Summary Judgment on Liability Only on Counts IV and V be **DENIED** and that the claims for liability and damages set forth therein and the claims for damages in Counts VI and VII of Plaintiff's Amended Complaint be scheduled for further proceedings consistent with said claims and any affirmative defenses thereto[5].

---

[4] It is unnecessary for this Court to reach the Constitutional Issues raised in Counts One through Five of Plaintiff's Amended Complaint. This decision is limited to the lack of statutory enabling authority of the County Commission of Mineral County to enact the ordinance at issue.

[5] This opinion/report and recommendation does not address the affirmative defenses of qualified immunity or absolute immunity asserted in Defendants' Third through Eighth Affirmative Defenses set fourth in their Answer to Plaintiff's Amended Complaint because those defenses go to liability for damages and the compensatory and punitive damages claimed by Plaintiff's in Counts

Any party may, within ten (10) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to counsel of record.

Respectfully submitted this 3rd day of October, 2007.

/s/ *John S. Kaull*
**JOHN S. KAULL**
**UNITED STATES MAGISTRATE JUDGE**

---

IV, V, VI and VII of its Amended Complaint but not sought in its Motion For Summary Judgment.