**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT ELKINS**

**T. WESTON, INC.,
dba Ridgeley Saloon,**

        **Plaintiff,**

    **v.**                                     **CIVIL ACTION NO. 2:04-CV-56
(Hon. John Preston Bailey)**

**MINERAL COUNTY, WEST VIRGINIA,
COUNTY COMMISSION OF MINERAL COUNTY,
LYNN A. NELSON, Prosecuting Attorney of
Mineral County, West Virginia,**

        **Defendants.**

## <u>MEMORANDUM ORDER AND OPINION</u>

Pending before this Court are the following:

(1)    Plaintiff's Motion for Summary Judgment on Counts I, II and III of the Amended Complaint, and for Summary Judgment on Liability Only on Counts IV, VI, and VII of the Amended Complaint against Mineral County, West Virginia and County Commission of Mineral County, West Virginia with Memorandum, Deposition Transcripts and Exhibits in Support (Docs. 42 & 43);

(2)    Opinion/Report and Recommendation issued by Magistrate Judge John S. Kaull relating to the above motion for summary judgment (Doc. 46);

(3)    Defendants' Motion to Modify Scheduling Order to Extend Deadline for Dispositive Motions and for Extension to Respond to Plaintiff's Motion for Summary Judgment (Doc. 57);

(4)    Defendants' Motion for Summary Judgment (Doc. 60); and

(5)    Opinion/Report and Recommendation issued by Magistrate Judge John S. Kaull relating to defendants' motions (Doc. 73).

For the reasons hereinafter stated, this Court will grant in part and deny in part plaintiff's motion for summary judgment, will adopt in part and decline to adopt in part Judge Kaull's recommendation as to the plaintiff's motion for summary judgment, will deny defendants' motions for extension and motion for summary judgment, and will adopt Judge Kaull's recommendation concerning defendants' motions.

## Procedural Background

On or about July 1, 2001, T. Weston, Inc. ("Weston") opened a nightclub in Mineral County, West Virginia, known as the Ridgeley Saloon. The nightclub featured exotic entertainment in the form of semi-nude and nude dancing.

A little over one year later on November 6, 2002, the Mineral County Planning Commission recommended an ordinance to the Mineral County Commission which regulated the location of businesses offering exotic entertainment. The Mineral County Commission passed the ordinance on November 20, 2002. The Ordinance, entitled "Ordinance Regulating the Location of Businesses Offering Exotic Entertainment," provides in pertinent part:

> WHEREAS, West Virginia Code Chapter 7, Article 1, Section 3jj, grants authority to the County Commission to enact ordinances restricting the location of businesses offering exotic entertainment . . . .
>
> Section 3:
>
> > a.    It shall be unlawful for any person to establish a business offering exotic entertainment without first obtaining a valid location permit issued by the Administrator.
>
> Section 4:

Any business offering exotic entertainment established prior to the effective date of this Ordinance shall be required to obtain a location permit. An application by such business shall be treated as a renewal and shall not be required to Complete Section 3, Item E of the application process, unless said business is proposing to change the location or expand the business at the existing location. All provisions of this Ordinance shall fully apply to an existing business offering exotic entertainment, except for the location restrictions contained in Section 10.

Section 5:

The Administrator shall approve the issuance of a permit to an applicant within thirty (30) days after receipt of a complete application unless he finds one or more of the following to be true . . . .

Section 8:

The Administrator shall revoke a permit if he determines that:

. . . .

6. a permitee or any employee of the permitted establishment knowingly allowed a person under 21 years of age to enter the establishment during hours of operation; . . . .

When the Administrator revokes a permit and / or license the revocation shall continue for a period of one year and the permitee and / or any person listed on the original application form shall not be issued a new location permit for one year from the date the revocation became effective. Any re-application shall be considered a new application and shall be required to comply with all location standards applicable at that time.

Section 14:

(A) It shall be unlawful to permit any person younger than twenty-one (21) years of age, entry into or to be on the premises of a business offering exotic entertainment at any time said establishment is open for business.

(B) It shall be the requirement of the operator of each business offering exotic entertainment to ensure that an attendant is stationed at each public entrance to the business offering exotic entertainment at all times during regular business hours.

(C) It shall be the responsibility and duty of the attendant to prohibit any person under the age of twenty-one (21) years from entering the business offering exotic entertainment.

Section 18:

Any person violating any provision of this Ordinance shall in addition to any other actions, which may be taken by the Administrator, The Mineral County Planning Commission or the Mineral County Commission, hereunder, shall be fined not more than one thousand dollars ($1,000) or imprisoned not more than thirty (30) days or both.

Section 19:

Any person adversely affected by any provisions of this Ordinance is entitled to seek direct judicial review before the Circuit Court of Mineral County with regard as to whether the Ordinance impermissibly burdens his or her right to establish or operate a business offering exotic entertainment.

The Mineral County Commission notified Weston on January 8, 2003, of the passage of the county Ordinance and of the obligation to complete and file an application in order to continue business operations.

Weston completed and submitted its application and fees to continue business operations at the Ridgeley Saloon.[1]

On May 6, 2004, Mineral County Prosecutor wrote Weston advising:

[E]ffective immediately your permit to operate a business offering exotic entertainment in Mineral County, West Virginia is hereby revoked pursuant to Section 14 of the County Ordinance. Section 14 prohibits persons under twenty-one from being on the premises during business hours. Such a violation requires mandatory revocation of your permit pursuant to Section 8.

The facts supporting this violation are that on April 17, 2004 you knowingly allowed two (2) twenty year olds whom were accompanied by undercover

---

[1] While the parties dispute whether or not Weston actually received a license, the determination of that fact is not essential to the resolution of the motions.

deputies of the Mineral County Sheriff's Department into the establishment during business hours. Both individuals were carded and allowed to enter.

Therefore, you must stop all exotic entertainment immediately. Failure to do so will result in criminal charges being filed against you and an injunction filed in the Circuit Court of Mineral County. You can rest assured that we will follow up to insure compliance with this letter.

The Prosecuting Attorney's letter was delivered to Weston on May 7, 2004, by three (3) Mineral County Sheriff's Deputies who ordered the bar to cease all dance performances and ordered the dancers to leave.[2]

Weston ceased exotic entertainment at the bar on May 7, 2004.

On August 11, 2004, Weston filed this action seeking a determination as to the validity of the Ordinance, injunctive relief prohibiting enforcement of the Ordinance, damages, and attorneys fees.

Ultimately, Senior Judge Robert E. Maxwell granted a preliminary injunction providing that:

(1)     Defendants be temporarily enjoined from enforcing Section 5(A)(6) insofar and insofar only as the refusal to issue a permit is based on an alleged violation of Section 8(F) or Section 14(A), (B) or (C) of the Mineral County Ordinance Regulating the Location of Businesses Offering Exotic Entertainment enacted November 2, 2002; and

(2)     Defendants be prohibited from denying Plaintiff a location permit for the operation of its business at the same location as it was operating on May

---

[2] There is a dispute as to whether the deputies ordered the dancers to stop dancing and leave or the manager of the club did so. The undersigned finds this issue of fact is not material to the determination of this matter.

7, 2004. (Doc. 22).

In the same order, Judge Maxwell ordered that the question: "Is a county commission which has created a planning commission pursuant to Chapter 8 Article 24 of the West Virginia Code precluded from adopting a county ordinance limiting the areas of the county in which a business may offer exotic entertainment pursuant to Chapter 7, Article 1, Section 3jj(b) of the Code?" be certified to the West Virginia Supreme Court of Appeals.

On June 29, 2006, the West Virginia Supreme Court of Appeals answered the above certified question in the affirmative – that is:

> We hold that a county commission that has created a planning commission pursuant to *W.Va. Code*, 8-24-1, *et seq.* does not have authority under *W. Va. Code*, 7-1-3jj(b) [2002] to adopt a county ordinance limiting the areas of the county in which a business may offer exotic entertainment.

*T. Weston, Inc. v. Mineral County*, 219 W.Va. 564, 569, 638 S.E.2d 167, 172 (2006).

A Scheduling Order was thereafter entered by the Court in this matter on December 8, 2006 (Doc. 32). The Scheduling Order was later modified by the Court at the request of the parties to extend the deadline for discovery until June 15, 2007, and for dispositive motions until July 13, 2007 (Doc. 39).

On July 13, 2007, plaintiff filed its Motion for Summary Judgment on Counts I, II, and III of the Amended Complaint, and for Summary Judgment on Liability Only on Counts IV, VI, and VII of the Amended Complaint against Mineral County, West Virginia and County Commission of Mineral County West Virginia (Docs. 42 & 43). The motion was referred to Magistrate Judge John S. Kaull for a report and recommendation.

Defendants did not file any dispositive motion, nor did any defendant file any

6

response to Plaintiff's Motion.

On October 4, 2007, Magistrate Judge Kaull entered an Opinion/Report and Recommendation finding there was no genuine issue of material fact in dispute regarding the issue of the authority to enact the ordinance at issue, and that the ordinance was invalid and unenforceable *ab initio* (Doc. 45). The Magistrate Judge did not reach plaintiff's claims that the Ordinance was otherwise illegal and unconstitutional.

As required, the Opinion/Report and Recommendation allowed the parties ten days from the date of entry to file any objections with the District Court. On October 16, 2007, plaintiff timely filed objections to the Report and Recommendation (Doc. 48). On October 19, 2007, defendants filed objections to the Report and Recommendation (Doc. 49). In their objections, the defendants expressly admitted that they did not file a dispositive motion or response to plaintiff's Motion. Only in a footnote in the objection, did the defendants state:

> The Defendants intend to seek leave of this Court to file additional briefs on the liability issues and to modify the Scheduling Order accordingly. The Motion will be based upon several premises, including the undersigned counsel of record's untimely struggle with person illness, as well as the care of a terminally ill family member during the last four (4) months. The undersigned prays this Court grant the Motion in the interests of justice and to permit as full and complete a record upon which to base its decision.

On November 20, 2007, defendants filed their Motion to Modify Scheduling Order to Extend Deadline for Dispositive Motions and for Extension to Respond to Plaintiff's Motion for Summary Judgment (Doc. 57).

On November 30, 2007, without decision by the Court on their Motion to Modify Scheduling Order and Extension of Time to Respond to Plaintiff's Motion, defendants filed a Motion for Summary Judgment (Doc. 60) and also filed a Memorandum in Opposition to

Plaintiff's Motion for Summary Judgment (Doc. 62). The Memorandum was filed three and one-half months after the plaintiff's motion and almost two months after Magistrate Judge Kaull issued his Report and Recommendation.

Similarly, the defendants' Motion to Modify Scheduling Order and Extension of Time to Respond to Plaintiff's Motion was referred to Magistrate Judge Kaull, who, after holding an evidentiary hearing on the motion, recommended denial of the same (Doc. 73).

Each of the motions has been briefed and is ready for decision by this Court.

## I. Motion to Modify Scheduling Order and Extension of Time to Respond to Plaintiff's Motion

In his Opinion/Report and Recommendation (Doc. 73), Magistrate Judge Kaull recommended that Defendants' Motion to Modify Scheduling Order to Extend Deadline for Dispositive Motions and for Extension to Respond to Plaintiff's Motion for Summary Judgment (Doc. 57) be denied. Magistrate Judge Kaull further recommended that Defendants' Motion for Summary Judgment (Doc. 60) and Memorandum in Support (Doc. 61) as well as defendants' Memorandum in Opposition to Plaintiff's Motion for Summary Judgment (Doc. 62) be stricken as being improvidently filed out of time and without leave of Court.

The defendants did not file timely objections[3] to Magistrate Judge Kaull's recommendation.[4] Pursuant to 28 U.S.C. § 636(b)(1)(c), this Court is required to make a

_____

[3] Magistrate Kaull's recommendation was issued via CM/ECF on July 1, 2008. Excluding Saturdays, Sundays and holidays, objections were due on July 16, 2008. The objections were filed on July 17, 2008.

[4] Despite the untimely filing, this Court has reviewed and considered the tardy objections.

*de novo* review of those portions of the Magistrate Judge's findings to which objection is made.

On June 10, 2008, Magistrate Judge Kaull held an evidentiary hearing, at which the plaintiff and the defendants appeared with counsel. The Court proceeded to hear testimony and receive exhibits. Thereafter the Court took the matter under consideration. Due to the sensitive nature of the testimony and evidence received during the hearing, the Magistrate Judge sealed the record of the same and this Opinion/Report and Recommendation was based on findings of fact and conclusions of law which were filed as an Appendix, which was sealed and is available for counsel of record in this action and court personnel only.

This Court has reviewed the transcript in this case, as well as the exhaustive twenty page Appendix thereto. Due to the sensitive nature of the evidence and discussion described in the Appendix (Doc. 74), this Court will not publicly analyze the same.

For the reasons stated in the Appendix, this Court will adopt the Magistrate Judge's Opinion/Report and Recommendation (Doc. 73).

### Plaintiff's Motion for Summary Judgment

In its Motion, the plaintiff raises the following contentions:

(1)     The Mineral County Ordinance prohibiting adults between the ages of 18 and 21 on the premises of an adult entertainment establishment is unconstitutional under the First and Fourteenth Amendments;

(2)     Defendants violated plaintiff's right to due process under the Fourteenth Amendment to the United States Constitution when they revoked plaintiff's permit to present constitutionally protected expression without procedural due process under the county ordinance;

(3)     Unless a law that requires a license or permit to engage in activity protected by the fist Amendment: (a) provides for a prompt decision as to whether the license or permit will issue, (b) provides for prompt judicial review in the event of a denial, and (c) removes discretion from officials in deciding whether to grant a license, it imposes a prior restraint and is unconstitutional under the First Amendment; the Mineral County ordinance suffers from all these defects;

(4)     As a matter of State law the Mineral County ordinance is a nullity and cannot be applied to Plaintiff's pre-existing use;

(5)     Plaintiff is entitled to a judgment declaring the Mineral County ordinance unconstitutional under the First and Fourteenth Amendments, a permanent injunction against its enforcement, and monetary damages, the amount of which is to be determined at trial, to compensate it for injuries it has suffered as a result of the defendants' violations of its rights.

As previously noted, the defendants failed to file any timely dispositive motions of their own, nor did they file a timely response to plaintiff's motion.

**State Law Claims**

This Court will first address the plaintiff's claims under State law.  The "Whereas" clause in the Ordinance at issue specifically and expressly states the authority to enact the ordinance is found in West Virginia Code § 7-1-3jj.  Defendants had originally argued that §7-1-3jj authorized the Commission to enact the Ordinance.  This Court went so far as to certify the question to the West Virginia Supreme Court of Appeals, which expressly held that  7-1-3jj did not confer authority on the Mineral County Commission to enact the

Ordinance.  ***T. Weston, Inc. v. Mineral County***, 219 W.Va. 564, 638 S.E.2d 167 (2006).[5]

Defendants next argue that, "despite its misleading citation to West Virginia Code §7-1-3jj, the Ordinance in question is a zoning ordinance originated by the Planning Commission of Mineral County, and adopted by vote of the Mineral County Commission pursuant to statutory authority created in the former Chapter 8, Article 24 of the West Virginia Code."   As the Magistrate Judge found in the Report and Recommendation regarding the Preliminary Injunction, however:

> The undersigned cannot ignore the plain language chose[n] by the county commission in drafting its ordinance clearly indicating that it drew its authority from Chapter 7, Article 1, Section 3jj for the enactment.  It did not refer to its general powers or to Chapter 8.

Further, the Magistrate Judge found that West Virginia Code § 8-24-1, *et seq.* also did not confer authority on the Mineral County Commission because Chapter 8 requires a comprehensive plan, and Mineral County has not shown that it had a comprehensive plan.

The defendants next argue that, in fact, Mineral County had adopted a comprehensive plan, although no comprehensive zoning ordinance was ever enacted.  It is this Court's opinion that this is insufficient to save the Ordinance.  West Virginia law makes it abundantly clear that a zoning ordinance must be based upon a comprehensive plan and must be comprehensive in nature.  In this case, the defendants have presented no evidence that the Ordinance in question is consistent with the comprehensive plan.  In addition, the Ordinance is clearly not comprehensive, but seeks only to regulate exotic entertainment.

---

[5] The Court specifically declined to decide whether Mineral County could pass such an Ordinance under other authority.

In *Lower Donnally Association v. Charleston Municipal Planning Commission*, 212 W.Va. 623, 575 S.E.2d 233 (2002), the West Virginia Supreme Court of Appeals stated:

> The governing body of every municipality . . . may by ordinance create a planning commission in order to promote the orderly development of its governmental units and its environs. . ..
>
> In accomplishing this objective, it is intended that the planning commission shall serve in an advisory capacity to the governing body of a municipality . . ..
>
> W.Va. Code § 8-24-1 (1969). The responsibilities of planning commissions are further defined in or by means authorized in the enabling legislation, as manifested throughout the following discussion:
>
> The 1959 legislative scheme for full implementation of the planning and zoning activities of cities and counties contemplates an initial adoption of a comprehensive plan for a city or county, the consequent development of subdivision regulations and their adoption, **followed by a zoning ordinance drawn in accord with the comprehensive plan**. The statute lays out detailed provisions for how the zoning ordinance and comprehensive plan thus adopted by a city may thereafter be amended. The enabling statute also contains some specific requirements for how each part of the planning and zoning scheme is to be administered, including a separate procedure for obtaining a permit to improve specific locations in accord with the comprehensive plan previously adopted.

212 W.Va. at 627, 575 S.E.2d at 237 (emphasis added).

This is consistent with the decision of the United States District Court for the

Northern District of Mississippi in ***Freelance Entertainment, LLC. v. Sanders***, 280 F.Supp.2d 533 (N.D. Miss. 2003), involving a similar issue. In ***Freelance***, the Court stated:

> Zoning regulations which restrict, rather than ban, the location of adult entertainment businesses throughout a jurisdiction, and are "designed to combat the secondary effects of such businesses," rather than to constraint the content of their speech *per se*, are considered time, place, and manner regulations. ***Encore Videos, Inc. v. City of San Antonio***, 310 F.3d 812, 815 (5th Cir. 2002) (citing ***City of Renton v. Playtime Theatres, Inc.***, 475 U.S. 41, 49 (1986)). Time, place, and manner restrictions, by their nature, require the exercise of a local government's "zoning" authority. Under § 17-1-9 M.C.A., **zoning regulations must be made in accordance with a comprehensive plan** . . ..

280 F.Supp2d at 544-545 (emphasis added).

> The ***Freelance*** Court held:

> In this case, Lowndes County's Ordinance not only includes a detailed description of what dancers and patrons can and cannot do within regulated establishments, but also dictates where such establishments may be located . . .. This element of the Ordinance brings it within the purview of a land-use restriction. Under Mississippi law, the local government is required to adopt such restrictions in accordance with a comprehensive zoning plan. . . . .The Ordinance enacted by Lowndes County, as it currently stands, bears no such relation to a comprehensive plan. It lacks the minimum elements required by §17-1-1(c) . . ..

> The court concludes that Lowndes County's ordinance can be adopted only as part of a comprehensive scheme of plan or zoning affecting the entire county. Since the Ordinance fails to comply with this State's statutes, it is, therefore, invalid.

280 F.Supp2d at 546-47.

Based upon the foregoing, this Court finds that Mineral County lacked the authority to enact the Ordinance, rendering the same invalid. A permanent injunction will issue enjoining the enforcement of the Ordinance.

This ruling does not end the controversy with regard to the State law claim, since the plaintiff also seeks compensatory damages emanating from the enforcement of the invalid ordinance. On its face, it would appear that Mineral County and the Mineral County Commission[6] enjoy immunity from damages under the West Virginia Governmental Tort Claims and Insurance Reform Act. W. Va. Code § 29-12A-1, *et seq.* In **Standard Distributing, Inc. v. City of Charleston**, 218 W. Va. 543, 625 S.E.2d 305 (2005), the West Virginia Supreme Court of Appeals held, in Syllabus Points 3 and 4, as follows:

> 3. "Pursuant to *W.Va.Code,* 29-12A-4(c)(2) [1986] and *W.Va.Code,* 29-12A-5(a)(9) [1986], a political subdivision is immune from liability if a loss or claim results from licensing powers or functions such as the issuance, denial, suspension or revocation of or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authority, regardless of whether such loss or claim is caused by the negligent performance of acts by the political subdivision's employees while acting within the scope of employment." Syllabus Point 4, **Hose v. Berkeley County Planning Commission**, 194 W.Va. 515, 460 S.E.2d 761 (1995).

> 4. "*W.Va.Code,* 29-12A-5(a)(9) [1986] clearly contemplates immunity for political subdivisions from tort liability for any loss or claim resulting from licensing powers or functions such as the issuance, denial, suspension or revocation of or failure or refusal to issue, deny, suspend or revoke any

---

[6] The plaintiff has indicated that it is not seeking money damages against defendant Nelson, only declaratory and injunctive relief. See Doc. 65, page 8.

permit, license, certificate, approval, order or similar authority, regardless of the existence of a special duty relationship." Syllabus Point 5, *Hose v. Berkeley County Planning Commission*, 194 W.Va. 515, 460 S.E.2d 761 (1995).

What would otherwise result in a finding of immunity is complicated, however, by the West Virginia Supreme Court of Appeals decision in *Bender v. Glendenning*, 219 W.Va. 174, 632 S.E.2d 330 (2006).  In *Bender*, the Court held that while the existence of an insurance policy does not automatically waive the immunities provided by the West Virginia Governmental Tort Claims and Insurance Reform Act, the failure of an insurer to include appropriate language and/or exclusions in the policy preserving the Act's immunities, those immunities are waived.

In this case, we do not have the benefit of the applicable policy.  The plaintiff claims that it did not receive the policy as required by Rule 26(a)(1)(d) or in response to a request for production.[7]   Accordingly, the defendants will be ordered to provide a copy of the applicable insurance policy within twenty (20) days of the entry of this Order.  The plaintiff will then have a period of fourteen (14) days from the receipt of the policy to inform the Court whether it wishes to assert that the policy waives the immunities under the  West Virginia Governmental Tort Claims and Insurance Reform Act.

### Federal Law Claims

In his Opinion/Report and Recommendation (Doc. 46), the Magistrate Judge declined to address the issue of whether the Mineral County Ordinance ran afoul of Federal

---

[7] The plaintiff provides no explanation as to why it did not seek a motion to compel at the appropriate time.

law.  The plaintiff filed an objection to this ruling on the basis that the lack of a Federal law violation may negatively impact the plaintiff's pursuit of damages.

In light of the uncertainty as to whether the plaintiff may recover damages under its State law claim, this Court finds it necessary to address the Federal law issues.

In writing the majority opinion in **United States v. Smith**, 812 F.2d 161 (4th Cir. 1987), Judge McMillan, sitting by designation, added a portion to the opinion in which the other two judges did not concur.  While Judge McMillan failed to persuade the other judges in that case, this Court finds his logic appealing.  Judge McMillan wrote, in part:

> It is true that the decision might rest upon the statutory grounds alone.  There is a constitutional theory that courts should avoid a constitutional basis for decision when less lofty grounds are available.  That theory may well be "more honoured in the breach than the observance."  W. Shakespeare, *Hamlet,* Act I, scene iv.  *See* the oft-cited case of **Ashwander v. Tennessee Valley Authority**, 297 U.S. 288 (1936), where Justice Brandeis wrote at length about avoiding constitutional decisions, but *concurred* in the decision *in that case on the merits* of the constitutional question then before the court.  The **Ashwander** theory is by no means mandatory, nor clear on a particular set of facts; in a recent opinion, **United States v. Albertini**, 472 U.S. 675 (1985), Supreme Court Justice O'Connor, writing for a 7-2 majority, has criticized the tendency of courts to avoid a constitutional question by straining the construction of a statute.

812 F.2d at 167 (emphasis in original).

In the present case, the potential unavailability of money damages under the state law claim compels this Court to address the Federal law claims.

In **Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward County**, 450 F.3d 1295 (11th Cir. 2006), the Eleventh Circuit found it necessary to address a

constitutional claim when complete relief was not available under a statutory argument. The court stated:

> The County nevertheless urges us to affirm the dismissal of Primera's § 1983 suit by applying "the well-established rule that where, as here, both constitutional and statutory claims arising from the same set of operative facts are asserted, *only* the statutory issues should be decided." (Appellee's Br. at 15.) The County cites a variety of decisions for the unremarkable proposition that a case should be decided on statutory, rather than constitutional grounds, whenever possible - ***Spector Motor Serv., Inc. v. McLaughlin***, 323 U.S. 101 (1944); ***Konikov v. Orange County***, 410 F.3d 1317, 1319 n. 1 (11th Cir.2005); ***Communist Party of Ind. v. Whitcomb***, 414 U.S. 441, 452 (1974).

> The County is surely correct that the Supreme Court and this Court have long held that where a party raises both statutory and constitutional arguments in support of a judgment, a court should first consider whether the plaintiff is entitled to full relief under a statute, and if so, should not reach the constitutional issue. *See, e.g., **McLaughlin***, 323 U.S. at 105 ("If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality ... unless such adjudication is unavoidable."); ***Ashwander v. Tenn. Valley Auth.***, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) (explaining that the Court avoids constitutional questions "if a case can be decided [by] a question of statutory construction or general law"); ***Konikov***, 410 F.3d at 1319 n. 1. But if a plaintiff is not entitled to statutory relief (as is the case here), then the constitutional claims are unavoidable and the federal court must address their merits. *See **Quackenbush v. Allstate Ins. Co.***, 517 U.S. 706, 716 (1996) ("We have often acknowledged that federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by

Congress."); ***Metropolitan Life v. Lockette***, 155 F.3d 1339, 1341 (11th Cir.1998) ("Abstention from the exercise of federal jurisdiction is the exception, not the rule. The doctrine of abstention ... is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." (internal quotation marks omitted)).

450 F.3d at 1306.

Similarly, in ***De La O v. Housing Authority of the City of El Paso, Texas***, 417 F.3d 495, 499 (5th Cir. 2005), the Fifth Circuit addressed the constitutionality of regulations that had since been amended, rejecting a claim of mootness on the ground that the damages claim precluded a finding of mootness.

"District courts ordinarily have a strict duty to exercise the jurisdiction that is conferred on them by Congress." ***Myles Lumber v. CNA Financial Corp.***, 233 F.3d 821, 823 (4th Cir. 2000), citing ***Quackenbush v. Allstate Ins. Co.***, 517 U.S. 706, 716 (1996). In ***Myles Lumber***, the Fourth Circuit determined that while a court could abstain from determining an issue in a suit involving equitable or discretionary relief, it enjoyed no such discretion in an action seeking damages. ***Id.*** The Court found that abstention from ruling on claims that plainly sought damages constituted an abuse of discretion.

The first attack on the constitutionality of the Ordinance is directed at paragraph 14, which provides as follows:

Section 14:

    (A)    It shall be unlawful to permit any person younger than twenty-one (21) years of age, entry into or to be on the premises of a business offering exotic entertainment at any time said establishment is open for business.

(B)     It shall be the requirement of the operator of each business offering exotic entertainment to ensure that an attendant is stationed at each public entrance to the business offering exotic entertainment at all times during regular business hours.

(C)     It shall be the responsibility and duty of the attendant to prohibit any person under the age of twenty-one (21) years from entering the business offering exotic entertainment.

The plaintiff contends that this paragraph impermissibly impinges upon the First Amendment rights of persons between the ages of 18 and 21.  This particular provision of the Ordinance is clearly content based.

"Nude dancing is expressive conduct protected by the First Amendment.  ***Schad v. Borough of Mount Ephriam***, 452 U.S. 61, 66 (1981).  Such dancing is not 'core' First Amendment speech, but rather 'falls only within the outer ambit' of free speech protection.  ***City of Erie v. Pap's A.M.***, 529 U.S. 277, 289 (2000) (plurality opinion)."  ***Essence, Inc. v. City of Federal Heights***, 285 F.3d 1272, 1283 (10th Cir.), *cert. denied*, 537 U.S. 947 (2002).  The First Amendment protects non-obscene, sexually explicit material involving persons over 17 years of age.  ***United States v. X-Citement Video, Inc.***, 513 U.S. 64, 72 (1994).  The First Amendment, then, must also protect the rights of persons over the age of 17 to view non-obscene, sexually explicit material.  ***Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.***, 425 U.S. 748, 756-57 (1976); ***Martin v. City of Struthers***, 319 U.S. 141, 143 (1943).

The precise issue was met in ***Essence, Inc. v. City of Federal Heights***, 285 F.3d 1272, 1283 (10th Cir.), *cert. denied*, 537 U.S. 947 (2002).  In ***Essence***, the Tenth Circuit determined that a ban of adults under the age of 21 on the premises of establishments providing exotic entertainment did not further an important or substantial government

interest.

Similarly, in **State v. Café Erotica, Inc.**, 269 Ga. 486, 500 S.E.2d 574 (1998), the Supreme Court of Georgia held that a statute prohibiting admission of persons under the age of 21 from premises where sexually explicit performances took place was an unconstitutional infringement on the First Amendment rights of persons in the 18 to 21 age group.

In **Paramount Film Distributing Corp. v. City of Chicago**, 172 F.Supp. 69 (N.D. Ill. 1959), the District Court invalidated an ordinance authorizing a limited exhibition of a motion picture only to persons over age 21. In so doing, the court stated:

> This section is invalid on another ground as well. Even if clearly drawn, it would be invalidated by the age limit of twenty-one years. A censorship statute is necessarily an invasion of the First Amendment right to freedom of expression. Although the City may under its police power limit that right to prevent an evil, any restrictive action must be reasonable, not capricious. Assuming without deciding that the City might correct the evil of exhibiting films unfit for "children" the present section is unsuitable for the purpose. Under it, a twenty year old, married service man would be prevented from seeing a film that might not be suitable for a girl of twelve. As Justice Frankfurter remarked in a similar situation, "Surely, this is to burn the house to roast the pig." As in the case just cited, the remedy is not appropriate for the end at which it is presumably aimed, and is an invalid exercise of police power.

172 F.Supp. at 71, quoting **Butler v. State of Michigan**, 352 U.S. 380, 383 (1957).

The Second Circuit recently upheld a preliminary injunction enjoining the enforcement of a New York City ordinance which prohibited the sale of aerosol spray paint and broad tipped indelible markers to persons under the age of 21. The City attempted to

justify the ordinance as a measure designed to reduce its graffiti problem.  **Vincenty v. Bloomberg**, 476 F.3d 74 (2nd Cir. 2007).

The case law relied upon by the defendants on this issue - all state cases, simply are not convincing.  The first, **Pel Asso, Inc. v. Joseph**, 262 Ga. 904, 427 S.E.2d 264 (1993), was effectively overruled by the Georgia Supreme Court's later decision in **Café Erotica**.

The defendants also rely on two Colorado cases, **City of Colorado Springs v. 2354, Inc.**, 896 P.2d 272 (Colo. 1995) and **7250 Corp. v. Board of County Commissioners**, 799 P.2d 917 (Colo. 1990).  The court in **7250** upheld the validity of a county ordinance which prohibited 18-21 year olds from entering the premises where live, nude entertainment was presented.  In **2354**, the Colorado court reaffirmed **7250**, but found such an age restriction invalid as it applied to book stores, video stores, and movie theaters.  Both cases, however, are of limited precedential value in light of the Tenth Circuit's decision in **Essence**, in which the court invalidated a Colorado municipal ordinance prohibiting persons under the age of 21 from being on the premises where live nude dancing was performed.

Based upon the foregoing authority, this Court finds that the proscription of persons between the ages of 18 and 21 on the premises where live exotic entertainment is offered offends the First Amendment rights of persons in that age group.

The plaintiff also contends that the revocation of its exotic entertainment license without prior notice and hearing offends the Constitutional guarantee of due process.

The Fourteenth Amendment protects individuals from being deprived of their

property without due process of law by guaranteeing substantive due process and procedural due process. *Daniels v. Williams*, 474 U.S. 327 (1986). Procedural due process requires governmental assurance that individuals are given certain procedural safeguards before being deprived of life, liberty or property. *Frazier v. Garrison I.S.D.,* 980 F.2d 1514, 1528 (5th Cir.1993).

A procedural due process right is implicated when a person possesses a constitutionally recognized interest in life, liberty, or property. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532 (1985); *Board of Regents v. Roth,* 408 U.S. 564 (1972). The United States Supreme Court has held that barroom type of exotic dancing lies on the outer perimeters of the First Amendment's protection. *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 565-66 (1991) (plurality opinion) (citing *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 932 (1975)); *see also Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 66 (1981). Explaining, the United States Supreme Court has added that even "[s]exual expression that is indecent but not obscene is protected by the First Amendment." *Sable Communications of Cal., Inc. v. FCC,* 492 U.S. 115, 126 (1989); *see also City of Erie v. Pap's A.M.,* 529 U.S. 277 (2000).

The Fourth Circuit, in *International Ground Transportation v. Mayor and City Council of Ocean City, Maryland*, 475 F.3d 214 (4th Cir. 2007), upheld a jury finding and damage award based upon the municipality's revocation of a taxicab license without notice and a pre-deprivation hearing.

In *Bell v. Burson*, 402 U.S. 535, 539 (1971), the United States Supreme Court, in the context of reviewing the suspension of a driver's license, explained that once a license

or permit is issued, it cannot be taken away without offering procedural due process. The Court stated: "This is but an application of the general proposition that relevant constitutional restraints limit state power to terminate an entitlement whether the entitlement is denominated a 'right' or a 'privilege.' *Sherbert v. Verner*, 374 U.S. 398 (1963) (disqualification for unemployment compensation); *Slochower v. Board of Higher Education*, 350 U.S. 551 (1956) (discharge from public employment); *Speiser v. Randall*, 357 U.S. 513 (1958) (denial of a tax exemption); *Goldberg v. Kelly*, [397 U.S. 254 (1970) (withdrawal of welfare benefits). *See also Londoner v. Denver*, 210 U.S. 373, 385-386 (1908); *Goldsmith v. United States Board of Tax Appeals*, 270 U.S. 117 (1926); *Opp Cotton Mills v. Administrator*, 312 U.S. 126 (1941)."

In this case, the Court must agree with the plaintiff that the revocation of the exotic entertainment license without notice and a hearing violated due process. In essence, the revocation constituted an impermissible prior restraint. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 226 (1990).

In the First Amendment context "any restraint prior to judicial review can be imposed only for a specified brief period *during which the status quo must be maintained*." *11126 Baltimore Blvd. Inc. v. Prince George's County, Maryland*, 58 F.3d 988, 996 (4th Cir. 1995), quoting *FW/PBS, supra* at 227 (citing *Freedman v. Maryland*, 380 U.S. 51, 58-60 (1965)) (emphasis added).

In the context of a statute permitting the seizure and destruction of gaming machines without notice and hearing, the Fourth Circuit stated:

> The absence of due process in this provision is apparent. "The constitutional
> right to be heard is a basic aspect of the duty of government to follow a fair

23

process of decisionmaking when it acts to deprive a person of his possessions." *Fuentes v. Shevin,* 407 U.S. 67, 80 (1972). The due process clause operates to protect the "use and possession of property from arbitrary encroachment-to minimize substantively unfair or mistaken deprivations of property...." *Id.* at 81. The enforcement of [the statute] leaves machine owners with no protections whatsoever against unfair or mistaken deprivations of their property.

*Helton v. Hunt*, 330 F.3d 242, 247 (4th Cir. 2003).

In *R.W.B. of Riverview, Inc. v. Stemple*, 111 F.Supp.2d 748, 758 (S.D. W.V. 2000), Judge Haden stated, "The Supreme Court held in *Elrod v. Burns*, 'The loss of First Amendment rights, for even minimal periods of time, unquestionably constitutes irreparable injury.' 427 U.S. 347, 353 (1976), citing *New York Times v. United States*, 403 U.S. 713 (1971)."

Based upon the foregoing, this Court will issue an injunction requiring the return and reinstatement of the plaintiff's exotic entertainment permit and prohibiting the revocation of any exotic entertainment permit without appropriate notice and hearing. The plaintiff is also entitled to a hearing to determine its entitlement to compensatory damages.

The defendants have attempted to evade liability by asserting the defenses of absolute immunity, qualified immunity, legislative immunity and prosecutorial immunity. None of these defenses save the day for the defendants.

Mineral County is, for § 1983 purposes, a municipality. *Rankin v. Berkeley County Sheriff's Dept.*, 222 F.Supp.2d 802, 806 (N.D. W.Va. 2002), citing *Revere v. Charles County Comm'rs*, 882 F.2d 870, 874 (4th Cir. 1989).

While municipalities (and counties) are not liable under § 1983 under the doctrine

of *respondeat superior*, **Rankin, supra**, citing **Monell v. Dept. of Social Services**, 436 U.S. 658 (1978), liability can be imposed if the entity causes a deprivation of Federal rights through an official policy or custom. **Carter v. Morris**, 164 F.3d 215, 218 (4th Cir. 1999). Such a policy may be found in written ordinances and regulations. **Id.**, citing **Monell, supra** at 690-91; **Curry v. Weiford**, 389 F.Supp.2d 704, 714 (N.D. W.Va. 2005). Inasmuch as the Ordinance in this case was the moving force for the constitutional violations, the County is not entitled to absolute immunity.

Nor is the County entitled to qualified immunity. "While individual defendants are protected by qualified immunity, municipalities are not." **International Ground Transportation v. Mayor and City Council of Ocean City, Maryland**, 475 F.3d 214, 219 (4th Cir. 2007), citing **Owen v. City of Independence**, 445 U.S. 622 (1980).

Legislative immunity also provides no solace. In **Berkley v. Common Council of City of Charleston**, 63 F.3d 295 (4th Cir. 1995) (en banc), the Fourth Circuit held that municipalities are not entitled to immunity from suits under § 1983 based upon unconstitutional enactments of its local legislature. In so holding, the Court stated:

> In **Monell v. New York City Dep't of Social Servs.**, 436 U.S. 658 (1978), the Supreme Court held that municipalities and other local governments are "persons" subject to liability for constitutional violations under 42 U.S.C. § 1983. **Id.** at 690. A municipality may only be found liable under section 1983, however, where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." **Id.** Since **Monell,** municipalities and local governments have repeatedly, and unsuccessfully, attempted to secure some immunity from liability in suits brought under section 1983.

In the course of adjudicating these various claims to immunity, the Supreme Court has left no doubt that municipalities and local governments are not entitled to immunity from suits brought under section 1983. Chief Justice Rehnquist, writing for a unanimous Court, could not have been any clearer when he observed recently that "unlike various government officials, municipalities do not enjoy immunity from suit - either absolute or qualified - under § 1983." *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 166 (1993). The Chief Justice based his observation in *Leatherman* on the Court's decision in *Owen v. City of Independence*, 445 U.S. 622 (1980), where, in denying municipalities a qualified immunity defense to claims brought under section 1983, *see id.* at 650, the Court "held" that "municipalities have no immunity from damages liability flowing from their constitutional violations," *id.* at 657. In the face of such clear and broad pronouncements by the Supreme Court, we have little trouble concluding that a municipality is not immune from section 1983 liability for unconstitutional enactments and other legislative activities of the local legislature.

63 F.3d at 296.

Finally, inasmuch as the plaintiff seeks only injunctive and declaratory relief and not damages against the prosecuting attorney, prosecutorial immunity does not apply. *See Women's Medical Professional Corp. v. Voinovich*, 130 F.3d 187, 210-11 (6th Cir. 1997); *West Virginians for Life, Inc. v. Smith*, 919 F.Supp. 954 (S.D. W.Va. 1996).


## Conclusion

For the reasons stated above, it is hereby **ORDERED**:

(1)     Plaintiff's Motion for Summary Judgment on Counts I, II and III of the Amended Complaint, and for Summary Judgment on Liability Only on Counts IV, VI, and

VII of the Amended Complaint against Mineral County, West Virginia and County Commission of Mineral County, West Virginia with Memorandum, Deposition Transcripts and Exhibits in Support (Docs. 42 & 43) is **GRANTED**;

(2)     the Opinion/Report and Recommendation issued by Magistrate Judge John S. Kaull relating to above motion for summary judgment (Doc. 46) is **ADOPTED IN PART** and **DECLINED TO ADOPT IN PART**;

(3)     the defendants are hereby enjoined from enforcing the Ordinance on the basis that the Ordinance was enacted in violation of State law;

(4)     The defendants shall provide to the plaintiff and to the Court a copy of any insurance policy and declarations page which may provide coverage within twenty (20) days of the date of the entry of this Order.  The plaintiff shall then have a period of fourteen (14) days from the receipt of the policy to inform this Court whether it wishes to assert that the policy waives the immunities under the West Virginia Tort Claims and Insurance Reform Act;

(5)     Defendants' Motion to Modify Scheduling Order to Extend Deadline for Dispositive Motions and for Extension to Respond to Plaintiff's Motion for Summary Judgment (Doc. 57) is **DENIED**;

(6)     Defendants' Motion for Summary Judgment (Doc. 60) is **DENIED**;

(7)     the Opinion/Report and Recommendation issued by Magistrate Judge John S. Kaull relating to defendants' motions (Doc. 73) is **ADOPTED** and **AFFIRMED**;

(8)     The defendants are hereby enjoined from excluding persons between the age of 18 and 21 from premises exhibiting exotic entertainment and from sanctioning entities that provide exotic entertainment for permitting such persons upon their premises;

(9)     An injunction is hereby issued requiring the return and reinstatement of the plaintiff's exotic entertainment permit;

(10)    The defendants are hereby enjoined from revoking any exotic entertainment permit without appropriate notice and hearing;

(11)    The Court will schedule a trial on the issue of damages.  In that regard, a telephonic scheduling conference is hereby set for **Thursday**, **September 25, 2008,** at **4:00 p.m.**  The Court will initiate the call.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: August 12, 2008.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE